UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHANIE WATSON,

      Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

Case No. 2:16-cv-14355
District Judge Nancy G. Edmunds
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 12), DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 14) and REMAND THIS MATTER TO THE COMMISSIONER

**I.    RECOMMENDATION**: For the reasons that follow, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment (DE 12), **DENY** Defendant's motion for summary judgment (DE 14), and **REMAND** this matter to the Commissioner for proceedings consistent with this recommendation.

**II.    REPORT**

Plaintiff, Stephanie Watson, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance (DI) and supplemental security income (SSI) benefits. This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 12), the Commissioner's cross-motion for summary judgment (DE 14), Plaintiff's reply (DE 15) and the administrative record (DE 9).

### A. Background and Administrative History

Plaintiff alleges her disability began on March 30, 2012, at the age of 53. (R. at 201.) She lists several conditions (right shoulder, neck, back, both knees, right foot, and jaw) that limit her ability to work. (R. at 227.) Her applications for DI and SSI were denied in September 2013. (R. at 71-92.) Her request for reconsideration was denied in November 2013. (R. at 133-134, 93-122.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (R. at 147-148.) ALJ Elving L. Torres held a hearing, and, on May 13, 2015, determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 22-70.) On October 12, 2016, the Appeals Council denied Plaintiff's request for review. (R. at 1-6, 12-13.) Thus, ALJ Torres's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on December 14, 2016. (DE 1.)

### B. Plaintiff's Medical History

The administrative record contains approximately 787 pages of medical records, of which Exhibits 1F through 27F were available to the ALJ at the time of

the May 13, 2015 decision. (R. at 41, 318-1104.) These records will be discussed in detail, as necessary, below.[1]

### C. Hearing Testimony

Plaintiff testified at the April 2, 2015 hearing, when she was just shy of 57 years old. (R. at 49-67.) As Plaintiff is not expressly challenging the ALJ's credibility assessment in the instant appeal, the Court will refer to Plaintiff's testimony as necessary below. Vocational expert (VE) Teresa Manning testified at the hearing, providing answers to two hypotheticals, one of which involved "no more than *frequent* gross and fine manipulation with the right dominant upper extremity," and another which involved the same limitation on an *occasional* basis. (R. at 67-69 (emphasis added), 188-193.)

### D. The Administrative Decision

On May 13, 2015, ALJ Torres issued a decision. (R. at 22-41.) At **Step 1** of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 30, 2012, the alleged onset date. (R. at 27-28.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease (DDD) of the cervical spine; status-post remote lumbar

---

[1] The record also contains the June 18, 2015 notes of Richard J. Katz, M.D. of Katz Orthopaedic Institute. (R. at 7-9.) However, the Appeals Council considered it irrelevant, as it post-dated the ALJ's decision. (R. at 2.)

[2] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

laminectomy with residual DDD; thoracic spine spondylosis with multilevel disc bulges; and status-post failed arthroscopies of the right shoulder, including fixation screw and residual adhesive capsulitis, and osteochondral defect localized in the right shoulder. (R. at 28-30.) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. at 30.) Between **Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[3] and determined that Plaintiff had the RFC:

> . . . to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she can lift and carry no more than 10 pounds with the right upper extremity on an occasional basis [*exertional limitations*]; can only frequently perform fine and gross manipulation with the right upper extremity; can never reach overhead with the right upper extremity [*manipulative limitations*]; and must avoid industrial vibrations and cold temperatures particularly to the right upper extremity [*environmental limitations*].

(R. at 30-34.) At **Step 4**, the ALJ determined that Plaintiff was capable of performing past relevant work as a clerical secretary, as this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (R. at 34-35.) The ALJ therefore concluded that Plaintiff had not been under a disability, as

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

4

defined in the Social Security Act, from March 30, 2012, through the date of the decision. (R. at 35.)

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). "Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*,

5

resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."); *Richardson*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Biestek*, 880 F.3d at 783 ("[A] decision supported by

6

substantial evidence must stand, even if we might decide the question differently based on the same evidence.") (citing *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F. Analysis[4]

#### 1. Opinion evidence

The Social Security Administration (SSA) will evaluate every medical opinion it receives. 20 C.F.R. § 404.1527(c) ("How we weigh medical opinions."). "Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion[:]" (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. *Id. See also* SSR 96-2p, 1996 WL 374188 (S.S.A. July 2, 1996);

---

[4] My Practice Guidelines for Social Security cases (*see* www.mied.uscourts.gov) and E.D. Mich. LR 7.1(d)(2) ("Form of Required Briefs.") were not followed with respect to specifically identifying issues on appeal in an "Issues Presented" page at the beginning of the brief. Plaintiff's counsel is forewarned that future non-complying briefs run the risk of being stricken.

7

*see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's medical opinion," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (citing § 404.1527(d)(2)).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir.

8

2006) (quoting *Wilson*, 378 F.3d at 547). *See also, Betty v. Comm'r of Soc. Sec.*, No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

### 2. The ALJ erred in evaluating the opinion evidence of Walter E. Afield, M.D.

Plaintiff challenges the ALJ's treatment of opinion evidence — including the opinions of Dr. Walter E. Afield with regard to neurological and mental health and Dr. R. Brian Williams with regard to orthopedic issues — and argues that the ALJ failed to comply with 20 CFR § 404.1527 and/or 416.927. (DE 12 at 7-13, DE 15 at 1-5.) Because I find that the ALJ committed harmful error with respect to his treatment of Dr. Afield's opinions and that remand is consequently necessary, this report does not go on to scrutinize the ALJ's treatment of Dr. Williams's opinion, nor does it take up Plaintiff's challenge to the ALJ's assessment of exertional limitations, as the RFC will need to be re-evaluated on remand in any case.

#### a. Lawrence Annis, Ph.D. (state agency psychological consultant)

In considering Plaintiff's mental condition, the ALJ heavily relied upon the psychological opinion of non-examining state agency consultant Lawrence Annis, Ph.D., who submitted an assessment dated November 21, 2013. (R. at 99-101, 113-115.) At Step 2, in determining Plaintiff's severe impairments, the ALJ noted:

9

> The undersigned relied heavily on the opinion of the state agency psychological consultants in arriving at these ratings. Notably, there is almost no evidence of any mental health treatment during the entire period at issue. Upon reviewing the claimant's medical files, the state agency psychological consultant found the claimant's alleged anxiety disorder and affective disorder to be nonsevere. [R. at 99-100, 113-114.] He found the claimant to have no restriction in activities of daily living, no difficulties in social functioning, and no difficulties maintaining concentration, persistence or pace. [R. at 100, 114.] He also found no evidence of any episode of decompensation of extended duration (Exhibits 5A, 6A). [*Id*.] The undersigned notes that the consultant is an impartial, licensed psychologist[] who is familiar with the requirements of disability used by the Social Security Administration. In addition, he had the opportunity to review the claimant's medical files.[5] The undersigned further notes that, in general, state agency psychological consultants are highly qualified psychologists and are considered experts in the evaluation of mental issues in disability claims (SSR 96-6p). As his opinion is *consistent with* the medical record as a whole and is not contradicted by any treating source opinion, the undersigned has afforded it **significant weight**.

(R. at 29 (emphases added).) The ALJ recognized that this opinion was not from an examining or treating source, but, at the same time, was from a psychologist.

### b. Walter E. Afield, M.D. (The Neuropsychiatric Institute)

During February 2014, licensed clinical psychologist Jennifer Barror-Levine, Psy.D. and/or Dr. Afield performed an in-depth neurobehavioral

---

[5] This appears to have included the August 13, 2013 notes of Edward Chen, M.D. of Clearwater Pain Management (*see* R. at 993-998), the October 11, 2013 notes of Richard Katz, M.D. of Florida Surgery Consultants (*see* R. at 1048), and Plaintiff's October 15, 2013 pain questionnaire / report (*see* R. at 262-279). (R. at 100-101, 114-115.) In other words, it seems the records reviewed did not concern mental health treatment.

10

assessment (R. at 1063-1069), computerized brain mapping (R. at 1070-1073), and an in-depth neuropsychiatric evaluation (1076-1079). Dr. Afield noted "abnormalities in the routine EEG . . .[,]" and further noted that "[i]n general, this constellation of findings can certainly be seen in patients with a closed head injury." (R. at 1073.) His diagnoses included: **(i)** status post-concussion with brain dysfunction; **(ii)** labyrinthine disorder; **(iii)** shoulder tear, biceps tears, and probable shoulder replacement; **(iv)** bilateral TMJ dysfunction; and **(v)** depression. (R. at 1079.) Progress notes later that same month mention, among other things, "she is depressed and has a permanent impairment[,]" and "her depression[,] which is considerable[.]" (R. at 1074-1075.) On March 6, 2014, Dr. Afield observed: "The electrical studies basically show no evidence of any seizure focus. However, we do find findings consistent with our clinical findings of brain damage." (R. at 1062.)

Approximately one month later, on April 2, 2014, Dr. Afield noted, among other things, that: **(a)** "[t]he neurodiagnostic testing is consistent with severe brain dysfunction[;]" **(b)** Plaintiff "really is totally impaired, totally disabled, and this is due to the accident[;]" **(c)** "[i]t is permanent, it is severe, and it is not going to get any better[;]" and **(d)** "[a]ll of her activities are markedly restricted." (R. at 1060-1061, 1084-1085.) On April 14, 2014, Dr. Afield completed a mental RFC

assessment, which listed several marked limitations and referred to the April 2, 2014 progress note. (R. at 1081-1083.) At Step 2, the ALJ stated:

> The minimal evidence of mental health treatment appears late in the file and is simply not supported by the overall dearth of treatment. Dr. Afield evaluated the claimant in February 2014 and April 2014. Despite such a relatively brief period of treatment, Dr. Afield opined that the claimant was "totally impaired, totally disabled" [sic] (Exhibit 23F [R. at 1060, 1084]). He further noted that all of the claimant's activities were markedly restricted (Exhibit 23F [*Id.*]), but then contradicted this assessment in finding moderate limitations in many areas and no evidence of limitation in others (Exhibit 24F [R. at 1081-1083]). His opinions are not supported by any corroborating medical evidence [from] other sources, are internally inconsistent, and appear exaggerated. Therefore, the undersigned has afforded his opinions and his treatment notes **very little weight**.

(R. at 29 (emphasis added).) In assigning little weight to these opinions, the ALJ recognized that Dr. Afield had evaluated Plaintiff but the treatment period was "relatively brief." Moreover, the ALJ considered Dr. Afield's opinion to be unsupported and internally inconsistent. As such, the ALJ considered the first, second, third and/or fourth factors. 20 C.F.R. § 404.1527(c)(1),(2),(3),(4).

### c. Discussion

As an initial matter, Plaintiff asserts that the ALJ did not consider the fact that the November 21, 2013 opinion of the state agency psychologist pre-dates Dr. Afield's February 2014 testing, and, as such, Dr. Annis's opinion was based on "incomplete evidence." (DE 12 at 12-13.) Yet, as the Commissioner points out, "[a]bsent a clear showing that the new evidence renders the prior opinion

12

untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand." *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009) ("the evidence submitted after the state agency assessment does not fatally undermine the accuracy of that assessment.").

Still, two aspects of the ALJ's interpretation of Dr. Afield's opinion are troubling. First, when Dr. Afield rated areas such as understanding and memory, sustained concentration and persistence, social interaction, and adaptation, he marked each of the 20 areas as either "moderately limited," or "markedly limited." (R. at 1081-1082.) In other words, contrary to the ALJ's interpretation, *none* of the boxes were marked "no evidence of limitation in this category." (R. at 29.)

Second, Plaintiff appears to be correct that the ALJ misrepresented the substance of Dr. Afield's reports. (DE 12 at 11.) To be sure, Dr. Afield's April 2, 2014 notes state that "[a]ll of [Plaintiff's] activities are markedly restricted." (R. at 1060, 1084.) However, this appears to be a statement about her activities of daily living rather than an assessment of her mental RFC. Instead, as Plaintiff points out, Dr. Afield's February 5, 2014 observation that Plaintiff "has marked restriction in many of her activities[,]" is consistent with Dr. Afield's April 14, 2014 mental RFC assessment in 15 of the 20 areas. (DE 12 at 11-12, R. at 1077, 1081-1083.) In other words, there is some truth to Plaintiff's claims that ALJ's purported inconsistency is "nonexistent" or "fabricated." (DE 12 at 12-13.)

13

It cannot be said that these errors are harmless. At Step 2, the ALJ determined that "[a]s for her mental condition, the claimant's medically determinable mental impairments of anxiety and affective disorders, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (R. at 29.) This may well have been the reason that the RFC does not contain a mental RFC, such as limitations on understanding and memory, sustained concentration and persistence, social interaction, and/or adaptation. Here, Plaintiff is challenging her ability to perform past relevant work as a clerical secretary, which the VE classified as having a DOT code of 201.362-030 with an SVP of six and upon which the ALJ based his Step 4 finding. (R. at 34-35, 67.) Although there are likely multiple ways to categorize Plaintiff's past relevant work,[6] Plaintiff correctly observes that "[i]f any limitation resulting from a mental impairment would have been included in Plaintiff's RFC, it would have been necessary for the vocational [expert] to consider the effect of such a limitation on Plaintiff's ability to do such 'skilled' work." (DE 12 at 10-11; *see also* DE 15 at 4-5.) It is certainly not difficult for this Court to appreciate the fact that brain dysfunction or brain damage ─ which a medical doctor found through well-documented, objective

---

[6] For example, the SSA originally categorized Plaintiff's 1998 – 2012 clerical work as having an DOT code of 209.562-010 with an SVP of 3. (R. at 104, 118.)

electrical studies (including computerized brain mapping) and neurobehavioral/neuropsychiatric testing[7] — might well have a significant impact upon an ALJ's Step 2 finding as to anxiety and affective disorders and/or an ALJ's mental RFC assessment and, in turn, might well have a significant effect, if not a preclusive one, upon a claimant's ability to perform skilled work.

Finally, a word must be said concerning Defendant's argument that Dr. Afield only met with Plaintiff a limited number of times solely for diagnostic testing and that Dr. Afield, therefore, is not a treating physician to whom any deference is owed. (DE 14 at 9-10.) This may be true, although the Court need not analyze that question in any depth here. As noted above, the SSA will evaluate every medical opinion it receives, and, one would assume, accurately. 20 C.F.R. § 404.1527(c), 416.927(c); *see also Johnson v. Commissioner of Social Security*, No. 2:13-cv-0105, 2013 WL 6062147, *7 (S.D. Ohio Nov. 18, 2013) (the factors set forth in Section 404.1527(c) "should be evaluated accurately."). The 20 C.F.R. §

---

[7] The February 2014 diagnoses include "[s]tatus post concussion with brain dysfunction." (R. at 1079.) The computerized brain mapping was interpreted on March 6, 2014, and the same-day progress note mentions "clinical findings of brain damage." (R. at 1070-1071, 1062.) The February 2014 neurobehavioral assessment included: (a) Eysenck Personality Inventory; (b) Beck Anxiety Inventory; (c) Beck Depression Inventory-II; (d) Beck Hopelessness Scale; (e) Beck Scale for Suicide Ideation; (f) Trauma Symptom Inventory; (g) Post Traumatic Stress Diagnostic Scale; (h) Davidson Trauma Scale; (i) Symptom Checklist 90-R; (j) Quality of Life Inventory; (k) Personal Problems Checklist; (l) House-Tree-Person Projective Drawings; (m) Sentence Completion Questionnaire; (n) Minnesota Multiphasic Personality lnventory-2. (R. at 1063.)

404.1527(c) factors will be considered "[u]nless [the SSA] give[s] a treating source's medical opinion controlling weight…." Here, Dr. Afield's opinion, though "considered," was not accurately interpreted and, therefore, was not appropriately weighed, irrespective of whether he was a treating physician to whom deference was owed. Had Dr. Afield's records been accurately interpreted, it may well have changed the ALJ's Step 2 conclusion - that Plaintiff's anxiety and affective disorders were "nonsevere" - and, by extension, the ALJ's RFC assessment, particularly if Dr. Afield's "hands on," examining opinions had been accurately contrasted with Dr. Annis's non-examining opinion.

### G. Conclusion

There being reversible error in the ALJ's interpretation of Dr. Afield's mental health opinions that requires remand and a re-evaluation of the RFC, the Court need not address Plaintiff's remaining arguments as to the ALJ's treatment of opinion evidence from orthopedic surgeon R. Brian Williams, D.O., P.A. or the ALJ's consideration of Plaintiff's ability to stand and walk. (*See* DE 12 at 8-10, 13-21 and DE 15 at 1-2, 5-7.) Accordingly, it is R**ECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment (DE 12), **DENY** Defendant's motion for summary judgment (DE 14), and **REMAND this matter to the** Commissioner for proceedings consistent with this recommendation, including, but not limited to: **(a)** a new hearing; **(b)** re-evaluation of the opinion

evidence, not necessarily limited to Dr. Afield's opinions and findings; (c) re-evaluation of the Step 2 analysis and findings; and, **(d)** reassessment of the RFC, as necessary.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

17

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  March 2, 2018              s/Anthony P. Patti
                                   Anthony P. Patti
                                   UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on March 2, 2018, electronically and/or by U.S. Mail.

                                   s/Michael Williams
                                   Case Manager for the
                                   Honorable Anthony P. Patti

18